UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HANNAH RUCKER                                    CIVIL ACTION

VERSUS                                           NO: 12-1540

SEARS, ROEBUCK AND COMPANY,                      SECTION: "J"(2)
ET AL.

## ORDER AND REASONS

Before the Court is Defendants' Motion for Summary Judgment. **(Rec. Doc. 14)** Plaintiff has filed both an opposition (Rec. Doc. 15) and a supplemental opposition. (Rec. Doc. 30) Defendants have replied to Plaintiff's original and supplemental oppositions. (Rec. Docs. 26, 33) The motion was set for hearing on the briefs on January 16, 2013.[1] In the instant motion, Defendants seek summary judgment on the grounds that there is no genuine issue as to any material fact concerning Defendants' liability. Having considered the motion, the memoranda, the record, and the applicable law, the Court finds, for reasons expressed more fully below, that Defendants' motion should be **DENIED**.

---

[1] This motion was originally set for hearing on December 19, 2012. However, the Court granted Plaintiff's opposed motion to continue the hearing and reset the hearing for January 16, 2013. (Rec. Doc. 24)

## PROCEDURAL HISTORY AND BACKGROUND FACTS

On May 23, 2012, Plaintiff, Hannah Rucker, filed the instant products liability lawsuit in the 22nd Judicial District Court for the Parish of St. Tammany against Sears, Roebuck and Company ("Sears") and Homelite Consumer Products, Inc. ("Homelite") Plaintiff's claims arise out of an incident in which she allegedly sustained injuries as a result of a defective hedge trimmer. (Rec. Doc. 1-1) In her petition, Plaintiff alleges that two weeks after purchasing the hedge trimmer at Sears, she was using it to trim shrubbery when the handle unexpectedly snapped, resulting in Plaintiff reaching out her right hand to catch it. (Rec. Doc. 1-1, ¶¶ 3-6) Plaintiff asserts that: (1) Defendants were negligent in (a) failing to warn that the product was not suited for its intended use, (b) selling a product that is unreasonably dangerous, and (c) manufacturing and selling a defective product, and (2) Defendants' negligence caused her injuries. (Rec. Doc. 1-1, ¶ 7)

On June 18, 2012, Defendants removed the action to this Court on the basis of diversity of citizenship. (Rec. Doc. 1) In their Notice of Removal, Defendants assert that the requirements of 28 U.S.C. § 1332 are satisfied, because, based on the nature of the incident and the Plaintiff's allegations, the amount in controversy exceeds $75,000 exclusive of interest and costs. (Rec. Doc. 1-1, ¶ 4) Moreover, Defendants assert that they believe that Plaintiff is a Louisiana resident, that Sears is a New York corporation with its

2

principal place of business in Illinois, and that Homelite is a Delaware corporation with its principal place of business in South Carolina. (Rec. Doc. 1, ¶¶ 5-7) On December 3, 2012, Defendants filed the instant motion for summary judgment. (Rec. Doc. 14) On December 11, 2012, Plaintiff filed a unilateral damages stipulation asserting that "the damages in this case, both at the time of filing of the original suit in state court, and currently, when taken in its entirety, including all aspects of the personal injuries involved, specifically medical expense, pain and suffering, scarring, and future medical cost, do not exceed, and are less than $75,000." (Rec. Doc. 16) On December 12, 2012, Plaintiff filed an opposed motion to continue the hearing on Defendants' summary judgment motion. (Rec. Doc. 17) The Court subsequently granted Plaintiff's motion to continue, resetting the hearing on Defendants' summary judgment motion for January 16, 2013. (Rec. Doc. 24) On January 11, 2013, Plaintiff filed a supplemental opposition to Defendants' motion for summary judgment (Rec. Doc. 30) On January 23, 2013, Defendants filed a supplemental reply. (Rec. Doc. 33)

## PARTIES' ARGUMENTS

Defendants contend that they are entitled to summary judgment, because there is no genuine issue as to any material fact concerning their liability. In particular, Defendants contend that after conducting discovery, there is no evidence establishing that the hedge trimmer was defective in design or manufacture.

3

Defendants generally assert, relying on <u>Stahl v. Novartis Pharmaceuticals Corp.</u>, 283 F.3d 254, 261 (5th Cir. 2002), that the Louisiana Products Liability Act ("LPLA") establishes the exclusive theories of liability for manufacturers for damages caused by their products, and that under the LPLA, Plaintiff bears the burden of establishing the following four elements: (1) that the defendant is a manufacturer of the product, (2) that the plaintiff's damages were proximately caused by a characteristic of the product, (3) that this characteristic made the product unreasonably dangerous, and (4) that the plaintiff's damages arose from a reasonably anticipated use of the product by the plaintiff or someone else. With respect to the third element — that the characteristic made the product unreasonably dangerous — Defendants assert that the LPLA enunciates four theories by which a plaintiff can establish that the product was unreasonably dangerous: (1) that the product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55, (2) that the product is unreasonably dangerous in design as provided in R.S. 9:2800.56, (3) that the product is unreasonably dangerous because an adequate warning has not been provided as required by R.S. 9:2800.57, or (4) that the product is unreasonably dangerous, because it does not conform to an express warranty of the manufacturer about the product, as required by R.S. 9:2800.58.

Defendants further identify the elements that Plaintiff must prove to establish that the product was unreasonably dangerous

4

under one of the four theories and generally assert, citing <u>Morris v. United Services Automobile Association</u>, 32-528 (La. App. 2 Cir. 2/18/00); 756 So. 2d 549, 558 and <u>Roman v. Western Manufacturing, Inc.</u>, 691 F.3d 686 (5th Cir. 2012), that the mere fact that an accident occurred is insufficient to establish that a product is defective or unreasonably dangerous within the meaning of the LPLA. Without directing the Court to any record materials or indicating on which record materials they rely, Defendants assert that based on discovery as of the date of their summary judgment motion,[2] "the plaintiff has produced no evidence whatsoever which in any way establishes any theory of recovery under the LPLA." (Rec. Doc. 14-1, p. 4) Defendants also point out that at the time of the filing of their motion for summary judgment, Plaintiff had not yet retained an expert "to assist the trier of fact in determining how the accident in question happened," despite the fact that the November 14, 2012 deadline in the Scheduling Order for Plaintiff to file expert reports had passed. (Rec. Doc. 14-1, p. 4) Although Defendants did not identify those portions of the record which they believe demonstrate the absence of a genuine issue of material fact for the Court,[3] they conclude that under the circumstances,

---

[2] The summary judgment motion was filed on December 3, 2012.

[3] Defendants did not provide any discovery materials in support of their motion for summary judgment when they initially filed it. However, in their opposition to Plaintiff's motion to continue the hearing on their motion (Rec. Doc. 20), Defendants explained that the parties had been engaged in an extended discovery dispute, which appears to have motivated the instant summary judgment motion. (Rec. Doc. 20, p. 1-2) Defendants asserted that they propounded written discovery to plaintiff on August 8, 2012, that Plaintiff failed to respond, and that Defendants accordingly set a Rule 37.1 discovery

Plaintiff cannot put forth any evidence establishing the essential elements of her claim, and, thus, that they are entitled to summary judgment.

Defendants do not explicitly specify whether they seek summary judgment with respect to all of Plaintiff's claims or only with respect to her LPLA claims. Plaintiff has asserted claims for negligence in her state court petition, which Defendants do not explicitly address in their motion. However, Defendants imply that they are manufacturers within the meaning of the LPLA, that consequently Plaintiff's exclusive source of recovery against them is under the LPLA, and that a grant of summary judgment as to Plaintiff's LPLA claims would effectively dispose of Plaintiff's entire case.

In her original opposition, Plaintiff asserts that on May 17, 2011, while she was trimming hedges at her home in Slidell, the handle of the hedge trimmer broke during normal use, causing her to

---

conference on September 11, 2012, which Plaintiff's counsel failed to attend. (Rec. Doc. 20, p. 1) On September 24, 2012, Defendants filed a motion to compel discovery and for sanctions. (Rec. Doc. 10) Magistrate Judge Wilkinson issued an order granting the motion, awarding sanctions, and ordering Plaintiff to submit responses to written discovery and submit to a deposition at a designated time and place. (Rec. Doc. 11) Plaintiff violated Judge Wilkinson's first order, which prompted Defendants to request a conference with Judge Wilkinson and Plaintiff's counsel. (Rec. Doc. 12) During the conference, Judge Wilkinson ordered Plaintiff for a second time to provide responses to the written discovery, to submit to her deposition at a designated time and place, and increased the amount of the sanctions. (Rec. Doc. 12) Thereafter, Plaintiff's counsel provided Defendants with written discovery as ordered by the Court a few days prior to Plaintiff's deposition. Plaintiff was deposed on October 30, 2102. (Rec. Doc. 20, p. 2) However, during the deposition, Plaintiff testified that she had never seen the written discovery and that the responses given in the written discovery were incorrect and not her responses. (Rec. Doc. 20, p. 2) Defendants assert that they filed this motion for summary judgment based on the lack of evidence provided in written discovery and Plaintiff's deposition. (Rec. Doc. 20, p. 2)

lose control of the device and ultimately cut her finger with the trimmer's blade mechanism. Plaintiff asserts that there were no warnings posted on the body of the hedge trimmer indicating that the handle was subject to breaking away during normal use. Plaintiff further asserts that had she been warned of the potential malfunction, she would have been better prepared to react to the hazard and protect herself from injury. Plaintiff claims that Defendants' failure to warn directly resulted in her injuries and that she would not have been presumed to know of the potential danger, because the unreasonably dangerous aspect of the trimmer was not obvious. Although Plaintiff, like Defendants, similarly submitted no evidence in support of the assertions in her opposition, she "firmly contends that a genuine issue of material fact does exist in this case." (Rec. Doc. 15, p. 3)

In their reply to Plaintiff's original opposition, Defendants addressed the unilateral damages stipulation that Plaintiff filed on December 11, 2012 (Rec. Doc. 16), in which she asserted that her damages are less than $75,000. Defendants assert that although Plaintiff did not file a motion to remand, the unilateral stipulation was ostensibly filed to avoid summary judgment by asserting that this Court lacks subject matter jurisdiction. Defendants contend that they removed this case from state court to federal court pursuant to the removal statutes, 28 U.S.C. §§ 1441(a)-(b), based on diversity jurisdiction, and that the jurisdictional facts supporting removal are to be judged at the

time of removal. Defendants concede that because Plaintiff has not stated an amount of damages in the complaint, they bear the burden of proving by a preponderance of the evidence that the amount in controversy exceeds $75,000. The Defendants assert that in determining whether a defendant has met this burden, courts initially inquire whether it is "facially apparent" from the plaintiff's complaint that the amount in controversy exceeds $75,000. Defendants contend that if it is not facially apparent from the petition that the amount in controversy exceeds $75,000, the defendant must present summary-judgment type evidence that the amount in controversy exceeds $75,000.

With regard to the first prong of the analysis — whether it is "facially apparent" from the plaintiff's complaint that the amount in controversy exceeds $75,000 — Defendants assert that based on Plaintiff's allegations in her petition, Defendants' defective product caused her to sustain "numerous bodily injuries," including "mental anguish, mental stress, medical expenses, inconvenience, permanent scar, permanent disability, permanent loss of use requirement (sic) and hand laceration, diminished life style and past and future pain and suffering." Thus, Defendants contend that it is reasonable to assume that a jury could award plaintiff $75,000 in damages. With regard to the second prong of the analysis, Defendants also direct the Court to excerpts from Plaintiff's deposition testimony in which she describes how the laceration to her hand, which she allegedly sustained in the

8

accident, aggravated a preexisting condition. (Rec. Doc. 26-1, pp. 6-12) The deposition excerpts allegedly show that Plaintiff underwent a mastectomy prior to the accident, during which her lymph nodes were removed. Because of the removal of her lymph nodes, the laceration to Plaintiff's hand resulted in her suffering from a swollen arm for almost a year and a half following the accident, which requires continued physical therapy and a prosthetic sleeve. Defendants assert, based on this deposition testimony, that Plaintiff appears to have sustained an injury, the value of which could exceed $75,000. Defendants further contend that Plaintiff's unilateral stipulation that she will not seek damages in excess of $75,000 does not negate the fact that at the time the case was removed, her damages met the jurisdictional threshold. Finally, Defendants contend, relying on <u>Waltman v. International Paper Co.</u>, 875 F.2d 468, 477 (5th Cir. 1989), that Plaintiff has not satisfied her burden under Federal Rule of Civil Procedure 56(c), because it was incumbent upon Plaintiff to provide evidence that raises a genuine issue of material fact concerning each element of her prima facie case, and that she failed to go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial.

Plaintiff's supplemental opposition memorandum includes Plaintiff's affidavit and an unsworn purported expert report from Holt Fastring ("Fastring Report"). Her supplemental opposition reiterates her allegations in her affidavit and the conclusions in

the Fastring Report.  Plaintiff contends that the Fastring Report and her affidavit demonstrate that she will be able to meet her burden at trial and that genuine issues of material fact exist. In her affidavit, Plaintiff makes allegations very similar to those that she made in her petition. In particular, she specifies  that she purchased a Homelite Products Craftsman hedge trimmer from a Sears store located in Slidell, Louisiana on May 4, 2011. (Rucker Aff., Rec. Doc. 30-1, ¶ 2) She claims that she followed all instructions before using the hedge trimmer and never made any alterations to the product either before or after the incident. (Rucker Aff., Rec. Doc. 30-1, 30-1, ¶¶ 2, 4) Plaintiff also specifies that the incident resulted in the trimmer cutting three fingers on her right hand. (Rucker Aff., Rec. Doc. 30-1, ¶ 3)

In the Fastring Report, Holt Fastring ("Mr. Fastring"), states that he inspected the trimmer and noted that one of the two handle-bail attachment screws were not completely screwed in, which allowed one side of the handle bail to be loosely attached to the body of the trimmer. (Fastring Report, Rec. Doc. 30-1, ¶ A) Mr. Fastring observed that the screw allows the broken component of the handle-bail, which is still attached, to wiggle under the screw head. (Fastring Report, Rec. Doc. 30-1, ¶ D, F) He opined that "most likely, vibration from being loosely attached to the body allowed the handle-bail to break loose on one side and the unbalanced weight of the trimmer hanging on the other end of the handle-bail caused it to fail." (Fastring Report, Rec. Doc. 30-1,

¶ D, F) Plaintiff argues that the loose handle-bail attachment screw observed by Mr. Fastring is a construction defect that produced a vibration which caused the handle bail to break on one side, resulting in an unbalanced weight distribution that caused the other handle to fail. Plaintiff alleges that the defect rendered the trimmer unreasonably dangerous in light of the fact that the trimmer employs a reciprocating sharp blade that can cut thick branches. Plaintiff also alleges that because the defective condition was located inside of the handle, Plaintiff would not have been presumed to know of the danger under state law.

In reply to Plaintiff's supplemental opposition, Defendants contend that the Fastring report should be stricken and disregarded by the Court for any one of three reasons. First, Defendants contend that the report is incompetent summary judgment evidence, because it is not sworn as required by Rule 56(c)(4) and does not otherwise comply with the statutory exception in 28 U.S.C. § 1746, which allows an unsworn declaration to substitute for an affidavit if it is made "under penalty of perjury" and verified as "true and correct." Defendants also contend, citing Snapt, Inc. v. Ellipse Communications, Inc., 430 Fed. Appx. 346, 351 (5th Cir. 2011), that the purported expert report does not satisfy the requirements of Rule 56(c)(4), because it is not is not based on Mr. Fastring's personal knowledge of the facts contained therein. Second, Defendants contend that the Fastring report does not satisfy the requirements of Rule 702 of the Federal Rules of Evidence, because

11

it: (a) contains no information regarding Mr. Fastring's qualifications, (b) contains no information regarding the methodology Mr. Fastring used to reach his conclusion that the trimmer handle likely broke because of vibrations in connection with a loose screw, and (c) contains no information about whether Mr. Fastring's methodology is accepted by his peers. Third, Defendants assert that Plaintiff did not timely submit the expert report in accordance with the Scheduling Order deadline requiring plaintiff to provide Defendants with any expert reports by November 14, 2012, instead submitting the report to Defendants on January 14, 2013. Defendants also emphasize that Plaintiff not only filed the Fastring report late, but failed to file witness or exhibit lists, which were due on December 14, 2013. Finally, Defendants contend that Plaintiff's affidavit, which sets forth basic facts concerning the case, does not create a genuine issue of material fact, because it merely establishes that an accident happened, not that the hedge trimmer at issue contained any defect.

### DISCUSSION

### A. Subject Matter Jurisdiction

Because Plaintiff has filed a unilateral damages stipulation asserting that her damages do not exceed $75,000, the Court will first address the question of its subject matter jurisdiction. In the Notice of Removal, Defendants assert that the amount in controversy exceeds $75,000 exclusive of interest and costs based on Plaintiff's description of the incident and her injuries in her

state court pleadings as follows:

> Petitioner, Hannah Rucker was trimming leaves when the handle snapped off the hedger purchased approximately two (2) weeks prior at the Sears, Roebuck and Company. Petitioner was holding power trigger with left hand and handle with right hand. The handle snapped off resulting in petitioner reaching right hand to catch machine while falling. Machine (sic) cut petitioner fingers.
>
> IV.
>
> Petitioner, Hannah Rucker had to go to the emergency room immediately.

(Rec. Doc. 1-1, p. 1, ¶¶ 3-4)

Although Plaintiff did not request a specific amount of damages in her state court pleadings, in light of Louisiana Code of Civil Procedure Article 893, which prohibits a plaintiff from alleging a specific amount of damages, she did allege that Defendants' defective product caused her to sustain "numerous bodily injuries," including "mental anguish, mental stress, medical expenses, inconvenience, permanent scar, permanent disability, permanent loss of use requirement (sic) and hand laceration, diminished life style and past and future pain and suffering." (Rec. Doc. 1-1, p. 2, ¶ 6) On December 11, 2012, after Defendants had filed the instant motion for summary judgment, Plaintiff filed a unilateral damages stipulation asserting that her damages "both at the time of filing of the original suit in state court, and currently, when taken in its (sic) entirety . . . are less than $75,000." (Rec. Doc. 16) Although Plaintiff did not file any motion to remand the case to state court and did not give any explanation

13

for her filing of the unilateral damages stipulation, the Court presumes that the purpose was to suggest that the amount in controversy is less than $75,000 and call the Court's subject matter jurisdiction into question. Nevertheless, the Court finds that it has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

The Fifth Circuit has "established a clear analytical framework for resolving disputes concerning the amount in controversy for actions removed from Louisiana state courts pursuant to § 1332(a)(1)." Gebbia v. Wal-Mart Stores, Inc., 233 F.3d 880, 882 (5th Cir. 2000) (citing Luckett v. Delta Airlines, Inc., 171 F.3d 295, 298 (5th Cir. 1999). Since Louisiana law prohibits plaintiffs from specifying the numerical value of their damages, "the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000." Id. The removing defendant "may prove that amount either by demonstrating that the claims are likely above $75,000 in sum or value, or by setting forth the facts in controversy that support a finding of the requisite amount." Id. at 883 (citations omitted). Furthermore, "once the district court's jurisdiction is established, subsequent events that reduce the amount in controversy to less than $75,000 generally do not divest the court of diversity jurisdiction." Id. (citations omitted). "[I]f it is facially apparent from the petition that the amount in controversy exceeds $75,000 at the time of removal, post-removal affidavits,

14

stipulations, and amendments reducing the amount do not deprive district court of jurisdiction." Id. (citations omitted).

The Court finds, relying on Gebbia, that it is facially apparent from Plaintiff's state court petition at the time of removal that the amount in controversy exceeded $75,000. Thus, Plaintiff's unilateral stipulation that her damages are less than $75,000 does not deprive the Court of subject matter jurisdiction. In Gebbia, the plaintiff filed suit in a Louisiana state court alleging that she slipped and fell in the produce section of a Wal-Mart and sustained injuries to her wrist, knee, and back. Id. at 881. She claimed damages in her state petition for medical expenses, physical pain and suffering, mental anguish and suffering, loss of enjoyment of life, loss of wages and earning capacity, and permanent disability and disfigurement. Id. Wal-Mart removed the action to federal district court pursuant to the removal statutes and predicated jurisdiction on diversity of citizenship. Id. While the suit was in the discovery stage, the plaintiff filed a motion to remand with an accompanying affidavit arguing that the $75,000 amount in controversy requirement was not satisfied, based on information Plaintiff had obtained during the course of discovery from her treating physicians. Id. at 882. The district court denied plaintiff's motion to remand, as well as Plaintiff's subsequent motion for reconsideration, based on its finding that it had subject matter jurisdiction, because the Plaintiff's petition at the time of removal alleged injuries that

exceeded the $75,000 amount in controversy requirement. Id.

On appeal, the Fifth Circuit affirmed the district court's decision, finding that it properly denied the Plaintiff's motion to remand because it was facially apparent from the plaintiff's original petition that her claimed damages exceeded $75,000. Id. at 883. In reaching that conclusion, the Fifth Circuit relied on Plaintiff's allegations that she sustained injuries to multiple body parts, including her wrist, back, and knee as a result of the slip and fall, and her claims for multiple categories of damages. See id. Like the plaintiff in Gebbia, the Plaintiff in this case claims to have suffered numerous bodily injuries as a result of the incident with the hedge trimmer, and she seeks to recover multiple categories of damages. Although Plaintiff, unlike the plaintiff in Gebbia, does not seek damages for lost wages and earning capacity, she similarly seeks damages for mental anguish, past and future pain and suffering, permanent disability, permanent scarring, and medical expenses. Moreover, Plaintiff also seeks to recover for additional categories of damages that the plaintiff in Gebbia did not seek, such as inconvenience, diminished lifestyle, and loss of enjoyment of life. Thus, the Court finds that in this case, it is facially apparent from the Plaintiff's state court petition that, at the time of removal, the amount in controversy exceeded $75,000. Thus, Plaintiff's subsequent unilateral stipulation that her damages do not exceed $75,000, either currently or at the time she

16

filed suit in state court, is insufficient to deprive the Court of subject matter jurisdiction. Because the Court finds that Plaintiff's state court pleadings demonstrate that the amount in controversy requirement is satisfied, it is unnecessary for the Court to consider the deposition excerpts which allegedly demonstrate that Plaintiff is claiming that the injuries she sustained in the incident aggravated a preexisting condition.

**B. Defendants' Motion for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

"In determining what is a material fact, the Court must review the substantive law of the case for identification of which facts are critical and which facts are irrelevant." Howell Hydrocarbons, Inc. v. Adams, 897 F.2d 183, 191 (5th Cir. 1990). Rule 56 further explains the procedures by which the parties must support their assertions that a fact cannot be or is genuinely disputed, and specifies in pertinent part that:

> [a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

17

> interrogatory answers, or other materials; or
>
> (B) showing that the materials cited to not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See id. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. See, e.g., id. at 325; Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. Little, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not

18

return a verdict for the nonmoving party." <u>Delta</u>, 530 F.3d at 399.

The Court finds that Defendants have failed to meet their initial burden of demonstrating the absence of a genuine issue of material fact. Defendants have only provided the Court with a blanket assertion that there is "no evidence" to support any theory of liability under the LPLA without directing the Court to the portions of the record on which they rely. The Fifth Circuit has explained that under the Supreme Court's precedents in <u>Celotex</u> and <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 159 (1970), the movant on a motion for summary judgment bears the initial burden of informing the Court of the basis for its motion and directing the Court to those portions of the pleadings, depositions, answers to interrogatories, and admissions which the movant believes demonstrate the absence of a genuine issue of material fact, regardless of whether the non-movant will ultimately carry the burden of proof on the issue at trial:

> <u>Celotex</u> makes clear that before the non-moving party is required to produce evidence in opposition to the motion, the moving party must first satisfy its obligation of demonstrating that there are no factual issues warranting trial . . . a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact. The Court specifically approved its earlier decision in <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 159 (1970), which stated that the party opposing a motion for summary judgment must respond only after the moving party meets its initial burden. This initial burden remains with the

19

moving party even when the issue involved is one on which the non-movant will bear the burden of proof at trial.

Russ v. Int'l Paper Co., 943 F.2d 589, 592 (5th Cir. 1991) (citing Howell Hydrocarbons, Inc., 897 F.2d at 191).

The Supreme Court has acknowledged that in cases "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file,'" and such a motion "will be 'made and supported as provided in Rule 56.'" Celotex, 477 U.S. at 324. Furthermore, in Celotex, the Supreme Court observed that the burden of persuasion imposed on a moving party by Rule 56 is a stringent one and that summary judgment should not be granted unless it is clear that a trial is unnecessary. 477 U.S. at 320 n. 2 ("The burden of persuasion imposed on a moving party by Rule 56 is a stringent one. Summary judgment should not be granted unless it is clear that a trial is unnecessary, and any doubt as to the existence of a genuine issue for trial should be resolved against the moving party.") (citations omitted).

Here, the Court finds that Defendants' motion was not made and supported in accordance with Rule 56. In their motion, Defendants asserted that there is no evidence that the hedge trimmer is unreasonably dangerous in its design and/or manufacture and that there is "no evidence" demonstrating any theory of liability under

the LPLA.[4] Although Defendants attack the sufficiency of Plaintiff's evidence, rather than the sufficiency of Plaintiff's pleadings, they do not identify for the Court the portions of the depositions, answers to interrogatories, or admissions that Defendants believe highlight the absence of a genuine issue of material fact with respect to whether the hedge trimmer was defective in design and/or manufacture. Defendants also failed to indicate to the Court in their motion that their claims that there is "no evidence" of any design or composition defect were based on the fact that during her deposition, Plaintiff disclaimed her interrogatory responses describing how the accident happened. Defendants explained for the first time that the basis for their motion was the disclaimed interrogatory responses in a subsequent memorandum.[5] At present, the only record materials before the Court are the pleadings, the portions of Plaintiff's deposition in which she disclaimed her interrogatory responses, the portions of Plaintiff's deposition in which she describes the lymphedema she experienced as a result of the cuts to her hands, the Fastring report, and Plaintiff's affidavit. Because Defendants failed to

---

[4] Moreover, although Plaintiff has asserted negligence claims, in addition to her LPLA claims, in her state court petition, Defendants do not explicitly address Plaintiff's negligence claims. Instead, they imply that they are manufacturers within the meaning of the LPLA, in which case Plaintiff's exclusive theory of recovery against them is the LPLA.

[5] This turn of events gives rise to the question whether Defendants, upon realizing that Plaintiff's discovery responses were not accurate during her deposition, sought the responses to the interrogatories during the deposition. However, neither party has provided Plaintiff's deposition to the Court.

satisfy their initial burden of indicating to the Court the record materials highlighting the absence of genuine dispute as to whether the product was unreasonably dangerous in its design or manufacture, the burden never shifted to Plaintiff to come forward with competent summary judgment evidence showing the existence of a genuine issue of material fact. Although the record undoubtedly reflects the failure of Plaintiff and her attorney to cooperate in the discovery process,[6] that does not relieve Defendants of their threshold burden of informing the Court of the basis for their motion and identifying the portions of the record which highlight the absence of a genuine issue of material fact.

Moreover, assuming for the sake of argument that the Court found that Defendants carried their initial burden and disregarded the Fastring report, in this relatively simple case, Plaintiff does not necessarily need an expert to explain to the jury "how the accident happened," and Plaintiff's affidavit is sufficient to create a genuine issue of material fact with respect to whether the hedge trimmer was defective or unreasonably dangerous in its construction or composition. In a products liability action, whether a product is unreasonably dangerous due to its composition or construction is a question of fact. <u>Morris v. United Servs. Auto</u>

---

[6] Defendants did point out that at the time of the filing of their motion for summary judgment, Plaintiff had not yet retained an expert "to assist the trier of fact in determining how the accident in questioned happened," in spite of the fact that the November 14, 2012 deadline in the Scheduling Order for Plaintiff to file expert reports had passed.

<u>Ass'n</u>, 32-528 (La. App. 2 Cir. 2/18/00); 756 So. 2d 549, 557. Ordinarily, under the LPLA, to maintain a construction or composition defect claim, the plaintiff bears the burden of proving that at the time the product left the manufacturer's control, the product deviated in a material way from the manufacture's specifications or performance standards for the product, or from identical products manufactured by the same manufacturer. La. R.S. 9:2800.55. However, in appropriate circumstances, a plaintiff in a products liability action may use circumstantial evidence under the doctrine of res ipsa loquitur to give rise to an inference that a product is unreasonably dangerous and, thus, defective. In that case, the burden shifts to the defendant manufacturer to prove that the product was not defective when it left the manufacturer's control. <u>Lawson v. Mitsubishi Motor Sales of America, Inc.</u>, 2005-0257 (La. 9/6/06); 938 So. 2d 35, 49 ("We see no reason why a plaintiff cannot use circumstantial evidence in order to make the inference that a product was unreasonably dangerous when that product left a manufacturer's control. This inference merely shifts the burden of proof to the defendant-manufacturer such that the manufacturer must prove that the product was not defective when it left the manufacturer's control.")

    As the Louisiana Supreme Court has explained:

    If applicable, [res ipsa loquitur] allows the trier of fact to infer negligence from the circumstances of the event. Generally, three criteria must be present for the doctrine to be applicable: 1) the facts must indicate that the plaintiff's injuries would not have occurred in

the absence of negligence; 2) the plaintiff must
establish that the defendant's negligence falls within
the scope of duty to plaintiff; and 3) the evidence
should sufficiently exclude inference of plaintiff's own
responsibility or the responsibility of others besides
defendant in causing the accident. Because the standard
of proof is preponderance of the evidence . . . the
plaintiff's evidence need only exclude all other
reasonable explanations for his injuries; it need not
'conclusively exclude all other possible explanations for
his injuries.

Id. at 50.

The Court finds that the doctrine is applicable in this case.

Plaintiff asserts in her affidavit that she purchased a Homelite

Consumer Products Craftman hedge trimmer from Sears. (Rucker Aff.,

Rec. Doc. 30-1, ¶ 2) She alleges that she purchased the hedge

trimmer in a box, that it required no assembly, and that it came

ready-to-use with the exception that Plaintiff had to charge the

battery prior to use. (Rucker Aff., Rec. Doc. 30-1, ¶ 2) Plaintiff

asserts that prior to using the hedge trimmer, she did not damage,

assemble, disassemble, modify, or alter the trimmer in any way and

followed all available instructions. (Rucker Aff., Rec. Doc. 30-1,

¶¶ 2, 4) Plaintiff further alleges that on May 17, 2011,

approximately two weeks after purchasing the hedge trimmer, she was

using it to trim shrubbery in her yard when the handle broke away

during normal use, resulting in the trimmer cutting three fingers

on her right hand.  (Rucker Aff., Rec. Doc. 30-1, ¶¶ 3-4)

Considering the Plaintiff's claims that the handle of the

hedge trimmer broke off unexpectedly during the course of normal

use only two weeks after she purchased the product and made no

alterations, coupled with the absence of any other evidence explaining what caused the handle of the nearly brand-new hedge trimmer to unexpectedly break, the Court concludes that a fact finder who credited Plaintiff's testimony could reasonably infer that the hedge trimmer was unreasonably dangerous in construction or composition at the time it left the Defendants' control. It is highly unusual for the handle of a hedge trimmer to unexpectedly break during the normal course of trimming shrubbery shortly after the time of purchase. Moreover, while Plaintiff's claims that she made no alterations or modifications to the pre-assembled product between the time she purchased it from Defendants and the time of the accident do not conclusively negate all other possible causes for her injuries, the Court finds that when viewed in the light most favorable to Plaintiff, they do "exclude other reasonable hypotheses with a fair amount of certainty," which is all that is required. See id.

In addition, none of the cases Defendants rely on foreclose the application of res ipsa loquitur in this case. In <u>Morris v. United Services Automobile Association</u>, the case Defendants cite for the proposition that the Court "cannot infer the existence of a [composition or construction defect] within the meaning of the LPLA based solely on the fact that an accident occurred," the third-party plaintiff alleged that a construction or composition defect caused an automobile accident. 756 So. 2d at 554-55. The Court finds that <u>Morris</u> is distinguishable, because in cases

25

involving motor vehicle accidents, unlike this case, a construction or composition defect is one of a variety of alternative equally likely causes for the collision. See Lawson, 938 So. 2d at 50 (explaining that the res ipsa loquitur is not applicable where the evidence does not sufficiently exclude inference of the responsibility of the plaintiff or others in causing the accident). Thus, while the application of res ipsa loquitur may be inappropriate in a case like Morris where the car accident could be explained by multiple different causes, none of which is more likely than the others, in this case, where the circumstances tend to exclude other reasonable hypotheses with a fair amount of certainty, the Court finds that application of the doctrine is appropriate.

Defendants also rely on Roman v. Western Manufacturing, Inc. In that case, after a jury found the defendant liable under the LPLA on the theory that the product at issue was unreasonably dangerous in construction or composition, the defendant appealed arguing that there was no legally sufficient evidentiary basis for the jury's verdict. 691 F.3d at 697. Although the defendant argued that plaintiff improperly used the evidentiary doctrine of res ipsa loquitur, the Fifth Circuit never considered whether res ipsa loquitur could have been used in the case, because the plaintiff had repeatedly disavowed reliance on the doctrine in the district court. Id. at 698. However, the Fifth Circuit did specifically note that it disagreed with the defendant's contention that the use of

the doctrine would have been improper, based on the Louisiana Supreme Court's decision in <u>Lawson</u> and several Louisiana appellate court decisions. <u>See</u> <u>id.</u> Thus, none of Defendants' authorities persuade the Court that, in this case, a reasonable fact finder could not infer, based on circumstantial evidence, that the hedge trimmer was unreasonably dangerous in composition or construction at the time it left Defendants' control. The Court finds that a genuine issue of material fact exists with respect to whether the hedger trimmer was defective or unreasonably dangerous in construction or composition. This factual issue precludes a grant of summary judgment with respect to Defendants' liability.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgement **(Rec. Doc. 14)** is **DENIED**.

New Orleans, Louisiana, this 5th day of February, 2013.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

27